Filed 11/30/21

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEFFREY SPAHN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DAN RICHARDS, <br><br> Defendant and Respondent. | A159495 <br><br><br> (Alameda County <br> Super. Ct. No.  RG17851006) |

Plaintiffs Jeffrey Spahn and Paul Bontekoe (collectively, plaintiffs) appeal from an amended judgment awarding defendant Dan Richards costs of proof under Code of Civil Procedure section 2033.420 for plaintiffs' failure to admit certain requests for admission during discovery.

We affirm.[1]

---

    * Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion, section I.

    [1] Undesignated statutory references are to the Code of Civil Procedure. While this appeal was pending, Richards moved for sanctions for plaintiffs' filing of an allegedly defective record designation notice.  (Cal. Rules of Court, rules 8.130(a), 8.140(c).)  We deferred ruling on the motion; we now deny it as moot.  Plaintiffs filed a corrected record designation notice, and Richards has not demonstrated plaintiffs' initial designation was made in bad faith or with the intent to delay this proceeding.  (*Demkowski v. Lee* (1991) 233 Cal.App.3d 1251, 1256.)

1

# BACKGROUND

Plaintiffs purchased property in Berkeley intending to demolish the existing structure and build a new residence. Richards, a licensed contractor, demolished the structure but did not build the new house.

## A.

### *The Lawsuit*

In 2017, plaintiffs filed a complaint against Richards alleging causes of action for breach of oral contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.[2] Plaintiffs alleged they met with Richards in June 2015 and reached "an agreement that Richards would perform all work (the demolition and construction of the new residence) in two phases; the demolition phase for $12,500 and building the new residence for $515,000." According to the complaint, plaintiffs and Richards "agreed on this fixed price contract and entered into this oral contract in June 2015." Then, on July 1, 2015, Richards allegedly "confirmed and agreed that he would perform the construction project" for $515,000 and would complete the work by May 2016.

The complaint averred Richards breached the oral contract and violated the covenant of good faith and fair dealing by refusing to build the home. Plaintiffs' promissory estoppel claim alleged Richards made a "clear and unambiguous promise" to build a new residence for plaintiffs by a date certain, and plaintiffs relied on this promise to their detriment. Plaintiffs sought compensatory and punitive damages.

---

[2] The complaint was consolidated with other litigation involving plaintiffs' property. We recite only those facts necessary to resolve the issues on appeal, doing so in the light most favorable to the judgment. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 787.)

Richards propounded requests for admission (RFAs) pertaining to plaintiffs' claim that the parties formed an oral contract in which Richards agreed to build plaintiffs' home. The RFAs asked plaintiffs to admit the parties did not enter into an alleged oral contract and did not have a meeting of the minds as to that alleged contract. The RFAs also asked plaintiffs to admit the alleged oral contract was not binding or enforceable. Plaintiffs denied the RFAs.

The trial court denied Richards's motion for summary judgment, concluding there were triable issues of material fact as to whether the parties entered into an enforceable oral contract to build a new residence.[3]

## B.

### *Trial*

Plaintiffs purchased the property in 2014. They intended to demolish the house on the property and build a new residence where Spahn — a licensed California attorney — could showcase his art collection.

Plaintiffs hired Ajay Manthripragada to design the home. In May 2015, Spahn and Manthripragada interviewed Richards. They discussed plaintiffs' budget for the demolition and the construction. Richards agreed to demolish the existing structure for $12,500. He did not agree to build plaintiffs' home.

After the meeting, plaintiffs gave Richards several sets of preliminary drawings, all of which were marked "NOT FOR CONSTRUCTION" and had

---

[3] Relying primarily on Spahn's declaration in opposition to the motion, the court concluded there were triable issues of material fact as to whether: (1) the parties entered into an oral contract wherein Richards agreed to build plaintiffs' house; (2) Richards's actions confirmed the parties' alleged understanding that they had entered into a binding oral contract; and (3) the parties agreed on the terms necessary to form a binding oral contract.

3

a blank schedule and no material specifications. Richards requested "contractor" plans, but Manthripragada did not provide them. Without those plans, Richards could not prepare a bid for the construction project. It was Richards's custom and practice to submit project estimates in writing and to use written construction contracts. He did not submit a written bid for plaintiffs' construction project.

On June 30, 2015, Richards signed a written contract for the demolition work and completed the demolition that same day. That evening, Spahn emailed Manthripragada and Richards. Spahn wrote: "assuming we get [Richards] approved, and we select [him] to do the job, fingers crossed," "the bank will still take 45 days to vest the loan and begin." On July 4, Manthripragada reminded Richards that he and Spahn were "waiting" for Richards's bid. That day, Spahn told Manthripragada that plaintiffs were "looking into other options to hire contractors we like . . . . [B]udget on this now should be well under $500k."

During this time period, plaintiffs solicited bids for the construction project. In July 2015, other contractors provided written estimates ranging from $600,000 to $800,000. One contractor told Spahn the home could not be built for $300 per square foot and called Spahn's estimated $500,000 budget "ridiculous."

Richards completed the necessary paperwork to obtain approval from plaintiffs' lender. He also looked into increasing his insurance coverage and may have spoken to at least one potential subcontractor. On July 21, 2015, Spahn told Manthripragada: "I think we have a committed contractor we just need to tread lightly until we have a contract signed." About a week later, Spahn and Manthripragada prepared, and later revised, a draft construction agreement. The contract attached an "itemized budget" with

4

a total cost of $515,000.  Because Richards had not provided a bid or an itemized cost breakdown, Spahn and Manthripragada " 'made up' " certain costs and used cost estimates from other contractors' bids.

In early August 2015, Spahn asked Richards to come to his office.  Richards agreed.  During that meeting, Spahn presented Richards with the written contract.  It was signed by plaintiffs.  Richards was "flabbergasted" over the fake budget.  He did not sign the contract.  Several weeks later, Richards told plaintiffs he was not going to pursue the construction project.  Plaintiffs hired another contactor to build the residence at a cost exceeding $1 million.

Spahn testified that he and Richards reached an oral agreement in June 2015 wherein Richards agreed to build plaintiffs' home.  In a telephone call lasting a "couple of minutes," Richards agreed to build the home for the fixed price of $515,000.  During the telephone call, Richards and Spahn did not discuss specific costs or a payment schedule.

After the close of evidence, Richards moved for directed verdict.  The court denied the motion, but noted it was "very close."  Plaintiffs' claims went to the jury, which returned a defense verdict.  The jury concluded there was no contract, and that Richards did not make a promise with clear and unambiguous terms.  In September 2019, the court entered judgment in the consolidated action.

## C.

### *Costs of Proof*

Richards moved for attorney fees and costs under section 2033.420.  He argued plaintiffs had no reasonable basis to deny the RFAs because substantial evidence known to plaintiffs indicated Richards never agreed to build plaintiffs' "new residence for a fixed price of $515,000," and plaintiffs

"failed to realistically evaluate their claims and perform a reasonable investigation" before denying the RFAs.

In opposition, plaintiffs asserted they had "reasonable grounds" to deny the RFAs. According to plaintiffs, Richards "engaged in conduct consistent with the terms of the oral agreement" by submitting a contractor qualification request with plaintiffs' lender, by agreeing to sign a written contract if required by plaintiffs' lender, and by "lining up subcontractors" for the construction project.

In December 2019, the court issued a thorough written order granting the motion and awarding Richards $239,170.86 in attorney fees and costs (costs of proof). The court determined plaintiffs had no reasonable grounds for believing they would prevail on the issues raised in the RFAs because the evidence at trial established plaintiffs knew they had not formed a binding oral contract *before* they filed the lawsuit.

The court noted that plaintiffs alleged they entered an oral contract no later than mid-June 2015, but that in late June and early July — after they allegedly entered an oral contract — plaintiffs had not received a bid from Richards or selected him to do the job and instead were soliciting and receiving bids from other contractors. As the court pointed out, if plaintiffs "had already entered an oral contract with Richards before June 30, there would be no question as to whether they would later 'select [him] to do the job' " nor any "reason to ask Richards for his bid." Next, the court observed that, in late July 2015, "Spahn indicated that he thought he had a committed contractor (Richards) but that [plaintiffs] 'needed 'to tread lightly' " until they had " 'a contract signed.' " As the court deduced, if the parties had already entered a binding oral contract, there would be no doubt Richards was the contractor and no need for a signed written contract.

6

The court rejected plaintiffs' assertion that Richards's actions gave them a reasonable basis to believe they had formed a binding oral contract. It found Richards's act of submitting a contractor qualification request, his solicitation of subcontractor bids, and his statement that he would investigate increasing his insurance coverage to enable him to work on the project, were steps Richards would take *before* "entering any construction contract, . . . to determine the feasibility of the project and its cost," not "steps Richards or any contractor would take *after* already entering into a contract to build a project for a fixed price." (Italics added.) In the court's view, neither Richards's failure to explicitly inform plaintiffs that he had not agreed to be their general contractor after they sent him a proposed written contract, nor Richards's failure to sign that contract, could be construed as acceptance or confirmation of an oral contract. Those facts, the court observed, supported "the opposite conclusion."

In late December 2019, the court issued an amended judgment for Richards which included costs of proof and awarded Richards prevailing party costs. Plaintiffs timely appealed the amended judgment.

## DISCUSSION

### I.

### The Notice of Appeal Encompasses the Costs of Proof Order

Before plaintiffs filed their opening brief, Richards moved to dismiss the appeal. He argued the notice of appeal was untimely because it was filed more than 60 days after notice of entry of the September 2019 judgment (original judgment). This court summarily denied the motion.

Richards renews the argument in his respondent's brief. "A summary denial of a motion to dismiss an appeal does not 'preclude later full consideration of the issue, accompanied by a written opinion, following review

7

of the entire record[.]' " (*Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, 967, fn. 9; *Kowis v. Howard* (1992) 3 Cal.4th 888, 900.) Having fully considered the issue anew and having reviewed the entire record, we again reject Richards's argument.

Richards contends plaintiffs were required to appeal the original judgment. We disagree. The original judgment, which did not award costs of proof, was superseded by the amended judgment, which did award those costs. (See *Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842–843 [amended judgment that makes a substantial modification supersedes original judgment for purposes of filing a notice of appeal].) Thus, plaintiffs' failure to appeal the original judgment is of no consequence.

The same is true with respect to plaintiffs' failure to separately appeal the costs of proof order. The amended judgment included the costs of proof award, and plaintiffs timely appealed that judgment. The "timely filing of a notice of appeal is an absolute jurisdictional prerequisite," but "technical accuracy in the contents of the notice is not. [Citation.] Once a notice of appeal is timely filed, the liberal construction requirement compels a reviewing court to evaluate whether the notice, despite any technical defect, nonetheless served its basic function—to provide notice of who is seeking review of what order or judgment—so as to properly invoke appellate jurisdiction." (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882–883.)

Although plaintiffs' notice of appeal refers to the amended judgment and not the costs of proof order, it is reasonably clear plaintiffs intended to challenge the costs of proof award as that is the only issue raised in plaintiffs' briefs. (*K.J. v. Los Angeles Unified School Dist.*, *supra*, 8 Cal.5th at p. 890.) Moreover, there is no indication Richards was misled or prejudiced by the

notice of appeal. (*Verceles v. Los Angeles Unified School Dist.* (2021) 63 Cal.App.5th 776, 783.) Accordingly, we construe plaintiffs' timely notice of appeal to encompass the costs of proof order.

## II.

## No Abuse of Discretion in Awarding Costs of Proof

A party to a civil action may propound a written request for the admission of "the truth of specified matters of fact, opinion relating to fact, or application of law to fact." (§ 2033.010.) " ' "Requests for admissions . . . are primarily aimed at setting at rest a triable issue so that it will not have to be tried. . . . If the litigant is able to make the admission, the time for making it is during discovery" ' " and not at trial. (*Grace v. Mansourian* (2015) 240 Cal.App.4th 523, 528–529 (*Grace*).) Under section 2033.420, if "the requesting party proves the truth of an RFA previously denied by the other party, the requesting party may move the court for an order requiring the other party pay the reasonable expenses incurred in making that proof, including reasonable attorney fees." (*Doe v. Los Angeles County Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 690 (*Doe*).)

Pursuant to section 2033.420, subdivision (b), "the trial court shall order the party denying the RFA to pay the costs of proof unless: (1) an objection was sustained to the request or a response was waived; (2) the admission sought was of no substantial importance; (3) there was reasonable ground to believe the party refusing to admit the matter would prevail on the matter; or (4) there was other good reason for the failure to admit." (*Doe, supra,* 37 Cal.App.5th at p. 690.) The party seeking to benefit from an exception listed in section 2033.420, subdivision (b) " 'bears the burden to establish the exception.' " (*Samsky v. State Farm Mutual Automobile Ins. Co.* (2019) 37 Cal.App.5th 517, 523.)

9

"In evaluating whether a 'good reason' exists for denying a request to admit, 'a court may properly consider whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party would prevail on the issue at trial.' " (*Doe, supra,* 37 Cal.App.5th at p. 690.) "A party's reasonable belief must be grounded in the evidence; it cannot be based merely on 'hope or a roll of the dice.' [Citation.] It is also not enough for a party making the denial to ' "hotly contest" ' the issue; instead, 'there must be some reasonable basis for contesting the issue in question before sanctions can be avoided.' " (*Orange County Water Dist. v. The Arnold Engineering Co.* (2018) 31 Cal.App.5th 96, 116 (*Arnold Engineering*).) A party's reliance on "self-serving testimony" may be insufficient to establish a reasonable refusal to admit a request for admission. (*Doe,* at p. 691.)

We review the trial court's order awarding costs of proof under section 2033.420 for abuse of discretion. (*Doe, supra,* 37 Cal.App.5th at p. 690.) " 'An abuse of discretion occurs only where it is shown that the trial court exceeded the bounds of reason. [Citation.] It is a deferential standard of review that requires us to uphold the trial court's determination, even if we disagree with it, so long as it is reasonable.' " (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753.)

The trial court concluded plaintiffs did not have reasonable grounds to believe they would prevail at trial on their claims arising out of the alleged oral agreement. (§ 2033.420, subd. (b)(3).) The court did not abuse its discretion in so concluding.

Plaintiffs alleged they reached an oral agreement with Richards to build their home for $515,000 in June 2015. But the evidence introduced at trial — which was known to plaintiffs when they denied the RFAs — belied

10

that contention.  Plaintiffs were aware Richards had not submitted a written bid for the project before, or after, the formation of the alleged oral contract. (Nor could he, as the architectural renderings plaintiffs provided were incomplete and not suitable for construction.)  When they denied the RFAs, plaintiffs were also aware that during the short telephone call where Spahn asserted he and Richards reached the oral agreement, there was no discussion of specific costs or a payment schedule.  Finally, plaintiffs knew that Spahn and Manthripragada " 'made up' " information about the construction costs in the written contract they hoped Richards would sign.

In light of this evidence, the trial court could reasonably conclude the claimed oral contract lacked essential and sufficiently definite terms that would establish the existence of a meeting of the minds.  (*Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 518; *Robinson & Wilson, Inc. v. Stone* (1973) 35 Cal.App.3d 396, 407.)  Also supported by the record was the court's conclusion that plaintiffs' belief that they could prove the requested admissions at trial, "however firmly held, was not reasonable."  (*Grace, supra*, 240 Cal.App.4th at p. 530; *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 512.)

Plaintiffs' arguments to the contrary are unavailing.  According to plaintiffs, the court failed to consider evidence supporting their "belief that an oral contract had been formed."  Not so.  The court considered the evidence upon which plaintiffs relied, including  testimony that Richards commenced the demolition before the parties signed the demolition contract, and evidence that Spahn emailed Richards in mid-July stating Richards's "bid" was the equivalent of a "fixed price contract at 515K."  Also before the court was evidence that in July 2015 — after the date of the alleged oral contract — plaintiffs had not yet selected Richards to perform the

11

construction and were instead actively soliciting bids from other contractors, and evidence that Spahn acknowledged in late July that he was not certain whether Richards was a "committed contractor." This conduct, coupled with Spahn's effort to obtain Richards's signature on the written contract, was inconsistent with plaintiffs' contention that an oral contract already existed.[4]

On this record, it was reasonable for the court to conclude plaintiffs did not have a reasonable belief they would be able to establish the existence of a binding oral contract at trial. It is not our role to reweigh the evidence: we must defer to the trial court, which is in the best position to "decide whether, in its discretion, the party who made the denials should be responsible for costs of proof on the issue." (*Arnold Engineering*, *supra*, 31 Cal.App.5th at p. 119.) Here, the trial court was well positioned to evaluate the reasonableness issue as it presided over the case from start to finish.

Plaintiffs also contend the costs of proof award was erroneous because the court "previously denied" Richards's motion for summary judgment. To support this argument, plaintiffs rely on *Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 131 (*Universal*). In that case, which concerned the Uniform Voidable Transactions Act (Civ. Code, § 3439 et seq.), a division of this court reversed a costs of proof award because the plaintiffs had offered "substantial" evidence at trial supporting their denial of the requests for admission. (*Universal*, at pp. 128, 131, 132.) The *Universal* court faulted the defendants for failing to cite *any* evidence in their costs of proof motion and instead drawing " 'a straight line from the admissions to the

---

[4] At oral argument, plaintiffs contended the trial court's failure to *discuss* each piece of their evidence demonstrated the court failed to *consider* all the evidence. Hardly so. Plaintiffs cited no authority, and we are aware of none, requiring a trial court to list evidence it considered and found lacking.

statement of decision as supporting their claim for fees.' " (*Id.* at p. 131.)

Additionally, *Universal* noted the trial court had previously denied the

defendants' summary judgment motion and that, in the malicious prosecution

context, "a denial of summary judgment in the underlying case normally

establishes probable cause to sue."[5] (*Ibid.*)

Relying on the *Universal* court's passing reference to summary

judgment, plaintiffs urge us to adopt a per se rule that defeating summary

judgment conclusively establishes the party reasonably entertained a good

faith belief it would prevail at trial. We decline plaintiffs' invitation.

"Summary judgment is appropriate only 'where no triable issue of material

fact exists and the moving party is entitled to judgment as a matter of law.' "

(*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607,

618.) In ruling on a summary judgment motion, a trial court must liberally

construe the evidence presented in opposition to the motion and resolve any

doubts about the evidence in favor of the party opposing the motion. (*Aguilar

v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) At trial, the trier of fact

has no such obligation.

The focus of the trial court's determination under section 2033.420,

subdivision (b) is whether " ' "the party making the denial held a reasonably

entertained good faith belief that the party would prevail on the issue *at

trial*." ' " (*Grace, supra,* 240 Cal.App.4th at p. 529, italics added; *Arnold*

---

[5] Other courts have held the inquiry on a costs of proof motion is *not* "whether the litigant had some minimum quantum of evidence to support its denial (i.e., 'probable cause')." (*Arnold Engineering, supra,* 31 Cal.App.5th at p. 119; *Samsky v. State Farm Mutual Automobile Ins. Co., supra,* 37 Cal.App.5th at p. 526.) Probable cause is a " 'low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely *unlikely to succeed.*' " (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1449, italics added.)

*Engineering, supra*, 31 Cal.App.5th at p. 119 [§ 2033.420, subd. (b) requires consideration of "substantiality" and "credibility" of evidence offered at trial].) Thus, the trial court did not abuse its discretion in determining plaintiffs' success against summary judgment had limited relevance to its posttrial determination that Richards was entitled to costs of proof. (See *Arnold*, at p. 131, fn. 13 [denial of motion for summary judgment did not justify plaintiff's failure to admit RFAs].)

In any event, *Universal* is distinguishable. Here, plaintiffs' evidence at trial was not substantial: it was implausible. Additionally — and unlike *Universal* — Richards's costs of proof motion described the evidence offered at trial and explained why plaintiffs lacked a reasonable good faith belief they would prevail in light of that evidence. Finally, in contrast to *Universal*, the judge who presided over the trial also ruled on the costs of proof motion and, in doing so, articulated why plaintiffs lacked reasonable grounds for believing they would prevail. For these reasons, plaintiffs' reliance on *Universal* is misplaced.

Next, plaintiffs assert the denial of Richards's motion for directed verdict precluded the court from later awarding costs of proof. We are not persuaded. In ruling on a motion for directed verdict, a "trial court has no power to weigh the evidence, and may not consider the credibility of witnesses." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629.) Instead, the court must give the opposing party's evidence "all the value to which it is legally entitled," and indulge "every legitimate inference from such evidence in favor of that party." (*Ibid*.)

The court's denial of the directed verdict motion did not, in the case before us, establish plaintiffs presented *credible* evidence that they

14

entered into an enforceable oral contract with Richards. (*Grace, supra,* 240 Cal.App.4th at p. 531 ["the mere fact defendants presented evidence at trial is not an automatic justification for denial of the requests"]; *Yoon v. CAM IX Trust* (2021) 60 Cal.App.5th 388, 394–395 [denial of nonsuit motion did not justify the plaintiff's failure to admit RFAs].)

In sum, we conclude the court did not abuse its discretion in determining plaintiffs lacked reasonable grounds for believing they would prevail on their claims arising out of the alleged oral contract. As such, the court properly awarded Richards costs of proof under section 2033.420.

## DISPOSITION

The amended judgment is affirmed. Richards is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

15

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Fujisaki, J.

A159495

Superior Court of Alameda County, Hon. Ronni B. MacLaren

Lunski & Stimpert, Marc R. Stimpert and Andrew C. McClelland, for Plaintiffs and Appellants Jeffrey Spahn and Paul Bontekoe.

Katzoff & Riggs, Kenneth S. Katzoff, Robert R. Riggs and Nicole C. Campbell, for Defendant and Respondent Dan Richards.